## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| **MALLORY BIGELOW**, | ) | |
| as Personal Representative of the | ) | |
| **ESTATE OF CAROLYN NADEAU,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:23-cv-00408-SDN |
| v. | ) | |
| | ) | |
| **TOWN OF MILO,** | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OBJECTION TO
### PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER

Defendant, Town of Milo (the "Town"), by and through the undersigned counsel, hereby responds to the Motion to Amend Scheduling Order filed by Plaintiff Mallory Bigelow, as Personal Representative of the Estate of Carolyn Nadeau, as follows:

### BACKGROUND

On October 30, 2023, Carolyn Nadeau filed the Complaint in this matter. (ECF 1.) Ms. Nadeau was at that time represented by attorneys Thomas Cox and Chet Randall. Ms. Nadeau filed an amended complaint on December 7, 2023. (ECF 5.) On January 8, 2024, the Court issued a Scheduling Order in this matter, which set the deadline for Ms. Nadeau to designate experts as March 21, 2024. (ECF 8.) Discovery was to close on May 23, 2024, with the case to be ready for trial by August 6, 2024. (ECF 8.)

On March 21, 2024, Ms. Nadeau moved to extend the Scheduling Order by 30 days on the grounds that Ms. Nadeau's expert required additional time to complete an appraisal of the property involved in this case. (ECF 14.) The Town consented to that motion. The Court granted that motion on March 22, 2024; Ms. Nadeau's deadline to designate experts was extended to April 30, 2024. (ECF 15.)

Ms. Nadeau served interrogatories and requests for production of documents on the Town on March 28, 2024. The Town served responses to those requests on Ms. Nadeau in May 2024.

On April 26, 2024, Ms. Nadeau again moved to extend the Scheduling Order by 30 days on the grounds that, *inter alia*, Ms. Nadeau's appraiser required additional time to complete an appraisal of the property. (ECF 17.) The Town consented to that motion. The Court granted that motion on April 29, 2024; Ms. Nadeau's deadline to designate experts was extended to May 30, 2024. (ECF 18.)

On May 30, 2024—the day of Ms. Nadeau's already twice-extended expert designation deadline—Ms. Nadeau moved to extend the Scheduling Order a third time, this time by 45 days, because, having finally obtained the appraisal, she wished to obtain a "second opinion" as to the value of the property. (ECF 19.)

The Town objected to this third request to enlarge the Scheduling Order on the grounds that there was no reason why Ms. Nadeau should reasonably require an additional 105 days to designate her experts beyond the time provided in the Scheduling Order, and that it was incumbent upon Ms. Nadeau when filing this matter to be prepared to prosecute her case. (ECF 20.)

On June 14, 2024, the Court held a conference on this third request for enlargement. (ECF 24.) The Court granted the motion over the Town's objection, but orally explained to Ms. Nadeau directly the importance of deadlines and indicated that her expert deadline would not be extended further. Ms. Nadeau's deadline to designate experts was now July 30, 2024—a further 60-day extension. (ECF 24.) Discovery was now set to close on October 11, 2024, with the case ready for trial by December 3, 2024. (ECF 24.)

On July 12, 2024—approximately two weeks before Ms. Nadeau's thrice-enlarged deadline to designate experts—counsel for Ms. Nadeau filed a Motion to Withdraw on the basis

of a breakdown in the attorney-client relationship. (ECF 25.) That motion requested, in the alternative, that a guardian ad litem be appointed for Ms. Nadeau under M.R. Civ. P. 17(c). (ECF 25.)

The court held a hearing on that motion on July 25, 2024. (ECF 32.) Ms. Nadeau appeared telephonically and indicated that she agreed that her relationship with her counsel had broken down, but opposed the request for appointment of a guardian. The Town took no position on either the Motion to Withdraw or the request for appointment of a guardian, but again expressed concern regarding prejudice to the Town from the serial delays in the case. The Town did not object to the Court conducting part of the hearing *ex parte*, without the presence of the Town or its counsel. Upon the Town being allowed to rejoin the hearing, the Court granted the Motion to Withdraw, concluding that there had been a breakdown in the attorney-client relationship, but denied the request for appointment of a guardian, citing the absence of any evidence to support a finding that Ms. Nadeau was incompetent as contemplated by Rule 17(c). (ECF 32.)

By a written order dated July 30, 2024, the Court stayed the case for a period of 45 days—until September 13, 2024—to permit Ms. Nadeau time to find new counsel, but explained orally explained to Ms. Nadeau that the case would continue after that 45 day-period, whether or not she was successful in obtaining new counsel. (ECF 32.) The Court amended the scheduling order, further extending Ms. Nadeau's deadline to designate experts to October 11, 2024. (ECF 32.) The new discovery deadline was December 20, 2024, and the expected trial date February 5, 2025. (ECF 32.)

Ms. Nadeau's deadline to designate experts—after being extended some *seven months* in total—came and went on October 11, 2024, without Ms. Nadeau designating any experts.

The Town served interrogatories, requests for production, and requests for admissions on Ms. Nadeau on November 19, 2024. The Town received no response. The Town sent a follow-up letter requesting responses on December 27, 2024. The Town received no response.

The discovery deadline—similarly extended seven months—came and went on December 20, 2024. Ms. Nadeau did not do any discovery after her interrogatories and requests for production served on March 28, 2024. Ms. Nadeau was represented by counsel approximately half of the time between that date and the discovery deadline. (ECF 32.)

The case was placed on the February 2025 civil trial list, and a final pretrial conference was set for January 3, 2025, with final pretrial memoranda required to be filed one week prior to that date. (ECF 37.) The Town filed its pretrial memorandum as required on December 23, 2024. (ECF 38.) Ms. Nadeau did not file a pretrial memorandum.

The final pretrial conference was held on January 3, 2025. (ECF 40.) At the conference, the Court asked the Town if it would be willing to participate in a judicial settlement conference. The Town expressed concern regarding the likelihood of success of such a conference, but indicated it would be willing to participate. The Town also alerted the Court to the fact that it had not received responses to its discovery requests, but was attempting to resolve the matter before requesting a conference, as required by Rule 26(g).

The Court set the matter for a judicial settlement conference on January 28, 2025. (ECF 41.) The case was placed on the March 2025 trial list. (ECF 45.) The parties were ordered to submit in camera settlement statements by January 21, 2025. (ECF 41.) The Town filed its statement as ordered on January 21, 2025. It is not known to the Town whether Ms. Nadeau filed such a statement as ordered.

The Town appeared for the judicial settlement conference on January 28, 2025. Ms. Nadeau did not appear. (ECF 47.) The Court issued an order rescheduling the conference for February 5, 2025, at 9:00 am. (ECF 47.) The Court wrote: "During the afternoon of January 28, Ms. Nadeau contacted the court clerk's office to advise that she was unaware of the scheduled conference. While the docket reflects that notice was sent to the parties, at this time, the Court will defer further exploration and discussion of the reason for Ms. Nadeau's non-attendance."

On February 5, 2025, the date of the rescheduled conference, Ms. Nadeau appeared an hour late. The reason for Ms. Nadeau's failure to appear at the scheduled time is not known to the Town. The judicial settlement conference was not successful. (ECF 51.)

On February 11, 2025, with the settlement conference unsuccessful and the Town still not having received any response to its discovery requests of November 2024, the Town requested a discovery conference. (ECF 52.) After hearing on February 19, 2025, the Court ordered that the Town re-serve the discovery requests on Ms. Nadeau by express delivery by February 21, 2025, and ordered Ms. Nadeau to respond by March 28, 2025. (ECF 57.) The Court explained to Ms. Nadeau, both verbally and in writing, that failure to respond by that date could result in the imposition of sanctions, including dismissal of the case. The case was placed on the May 2025 trial list. The Town re-served the discover requests upon Ms. Nadeau, as directed, on February 20, 2025.

On March 24, 2025, the Town received information that Ms. Nadeau had passed away on or about March 22 or 23, 2025. On March 28, 2025, the Town was informed that Ms. Nadeau's daughter, Ms. Bigelow, intended to seek appointment as personal representative of Ms. Nadeau's estate. Counsel now representing Ms. Bigelow in that capacity (but not yet retained at that time) requested a 60-day extension of the deadline to respond to the long-overdue discovery requests.

5

On April 1, 2025, the Town filed a statement notifying the Court of Ms. Nadeau's death, conveying Ms. Bigelow's extension request, and—under the circumstances, despite the ongoing prejudice to the Town due to repeated delays—indicating that the Town did not object to the requested enlargement. (ECF 58.) The court granted the requested enlargement, and the case was removed from the May 2025 trial list. (ECF 59, 60.)

On April 17, 2025, Mallory Bigelow, as Personal Representative of the Estate of Carolyn Nadeau, moved for substitution as plaintiff in this matter, without objection from the Town. (ECF 64.) The Court granted the motion the same day. (ECF 66.)

On May 27, 2025, Ms. Bigelow filed the present motion to amend the scheduling order to retroactively enlarge the deadline for expert designations and reopen discovery. (ECF 73.)

## ARGUMENT

The history of this case is one of serial delay and inaction by Ms. Nadeau, both when originally represented by counsel and when later proceeding pro se. Ms. Bigelow, having stepped into her late mother's shoes in this litigation, now seeks a "do-over" of the past 19 months of litigation.

Ms. Bigelow seeks to retroactively extend the expert designation deadline, which expired October 11, 2024, and the discovery deadline, which expired December 20, 2024, under Federal Rule of Civil Procedure 6(b)(1)(B). That rule provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." F.R. Civ. P. 6(b)(1)(B). The Supreme Court has interpreted "excusable neglect" to involve the consideration of several factors, including "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the

reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Although *Pioneer* was interpreting the phrase in the context of a bankruptcy rule, the First Circuit has applied it to "excusable neglect" arguments arising under various provisions of the Federal Rules, including Rule 6(b). *Tubens v. Doe*, 976 F.3d 101, 105 (1st Cir. 2020). Not all *Pioneer* factors are created equal. "Within the constellation of relevant factors, the most important is the reason for the particular oversight." *Id.* (cleaned up) (quoting *Skrabec v. Town of N. Attleboro*, 878 F.3d 5, 9 (1st Cir. 2017)). As the First Circuit has explained:

> The four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry. . . . At the end of the day, the focus must be upon the nature of the neglect.

*Hospital del Maestro v. National Labor Relations Bd.*, 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). Thus, in *Hospital del Maestro*, the First Circuit held that excusable neglect was absent, even thought the delay was only *one day*, with "little danger of prejudice" to the other party, no negative impact on the proceedings, and no bad faith by the moving party, because the movant offered not justifiable reason for its misreading of the rules. *Id.*; *see also Tubens*, 976 F.3d at 106 (""Even where there is no prejudice, impact on judicial proceedings, or trace of bad faith, the favorable juxtaposition of these factors does not excuse the delay where the proffered reason is insufficient." (cleaned up)). *Dimmitt v. Ockenfels*, 407 F.3d 21, 25 (1st Cir. 2005) (holding good faith and absence of prejudice not sufficient to establish excusable neglect, where movant offered no valid reason for noncompliance).

Inattention, carelessness, or ignorance of the rules do not constitute excusable neglect. *See, e.g.*, *Pioneer*, 507 U.S. at 392; *Dimmitt*, 407 F.3d at 24; *see also Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) ("[T]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.") A particular omission should also be viewed in context. *Tubens*, 976 F.3d at 106. For example, the First Circuit upheld the conclusion that a party's failure to timely serve an amended pleading was not excusable neglect, even though the delay was only 10 days, where it followed "numerous delays and failures to comport with the Court's procedural rules." *Id.*; *see also Kaercher v. Trs. of Health & Hosps., Inc.*, 834 F.2d 31, 34-35 (1st Cir. 1987) (no excusable neglect in light of moving party's "previous pattern of delay and neglect").

## I.     Ms. Bigelow Fails to Present Competent Evidence that Ms. Nadeau Suffered a Mental Illness that Prevented Her From Prosecuting Her Case or Meeting Deadlines.

Because the case law establishes that the reason for an omission or late filing is the most critical consideration, the Town addresses it first. *See, e.g.*, *Tubens*, 976 F.3d at 105; *Hospital del Maestro* 263 F.3d at 175. In short, Ms. Bigelow presents no competent evidence that Ms. Nadeau's failure to designate experts or do discovery in accordance with the schedule, already enlarged seven months for her benefit—or even to *ask* for additional time—was based on anything other than simple inattention or ignorance of the rules.[1]

In support of her motion, Ms. Bigelow submits a declaration, in which she identifies herself as a social worker. (ECF 73-1 at ¶ 3.) She indicates her belief, "[b]ased on [her] observations of" Ms. Nadeau, that her mother was "not capable of functioning or taking care of herself," and did not understand "how the court proceedings in this case or in other worked or could impact her

---

[1] To be clear, Ms. Nadeau's deadline to designate experts and the discovery deadline had passed many months before her tragic passing. Her death months later did not cause her failure to comply with those deadlines.

life," or that "the town had foreclosed on the property or that it had been sold to someone else." (ECF 73-1 at ¶¶ 5-8.) She also opines, based on her observations and "review of some of her health records," that Ms. Nadeau "suffered from delusions that made it impossible for her to comply with court orders or understand the impact of her decisions." (ECF 73-1 at ¶ 9.) She appears to draw a connection between these observations and a "significant tumor in [her mother's] occipital lobe," which she alleges "[o]n information and belief." (ECF 73-1 at ¶ 10.)

With all due respect to Ms. Bigelow, she is not a medical professional qualified to offer expert testimony on Ms. Nadeau's mental health. *See* Fed. R. Evid. 701, 702. Her "beliefs" based on her lay observations are not evidence of any mental condition, let alone a condition that would have prevented Ms. Nadeau from prosecuting her case. *Cf. Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 149 (3d Cir. 2021) (holding, in Rule 17 context of Rule 17 analysis, that "anecdotal information or layperson opinions do not constitute verifiable evidence"); *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) (requiring "verifiable evidence of incompetence," such as a court or agency adjudication of incompetence, or "verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent" to trigger review of a litigant's competence under Rule 17). Much of Ms. Bigelow's declaration it is also expressly *not* based upon her personal knowledge but is asserted "on information and belief."[2]

Ms. Bigelow attaches to her declaration what purports to be a 10-page record of an office visit of Ms. Nadeau to the Adult Wellness Center in Bangor. (ECF 73-1 at 4-13.) She indicates that record is of an medical examination on March 20, 2023, but the document itself suggests at

---

[2] The jurat in her declaration conspicuously departs from the language provided in 28 U.S.C. § 1746 ("I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.") by adding numerous caveats ("to the best of my knowledge and based on my personal knowledge or, where otherwise stated on information and belief").

least 4 other dates: January 6, January 15, February 1, and February 16, 2023. The pages appear out of order, and there are two different pages numbered "Page 3," which are not duplicates and whose relation to one another is not obvious. (ECF 73-1 at 5-6.) The first 8 pages (including both pages labeled "Page 3") conclude with what purports to be the electronic signature of a Jeffery J. Bowers MD on January 15, 2023. (ECF 73-1 at 10.) The last two pages (labeled "Page 8" and "Page 9") conclude with what purport to be the electronic signatures of a Colleen Owens LCPC and a Kaitlin Drake LCPC-C on February 16, 2023. (ECF 73-1 at 13.) Page 8 does not appear, visually or logically, to continue on from Page 7 (and the two are separated by an apparently out of sequence "Page 1"). (ECF 73-1 at 10-12.) There are handwritten notations throughout the document, of unknown authorship, including one that simply reads "lie." (ECF 73-1 at 4.) It is not clear, on the face of this document, whether it is in fact one complete document, rather than two or more incomplete documents mashed together. Moreover, the document is hearsay, and Ms. Bigelow is plainly not the custodian of records for the Adult Wellness Center, such that she could authenticate the document, lay the foundation for its admission into evidence, or explain the inconsistencies noted above. *See* Fed. R. Evid. 801, 802, 803(6), 901, 902(11)

In any event, even if this document were admissible, it would fall well short of establishing the type of severe mental illness Ms. Bigelow suggests. At best, it reflects a diagnosis of generalized anxiety disorder, and a *suspicion* of some other unspecified disorder, which, to diagnose, would have required a psychiatric evaluation that did not occur. (ECF 73-1 at 8.) Indeed, the document indicates that Ms. Nadeau, although prone to distraction, was able to make decisions. (ECF 73-1 at 6, 12.) If an anxiety diagnosis, without more, were sufficient to establish excusable neglect, court orders and rules of procedure would be largely advisory.

As other Circuits have observed, "parties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability, and that there is no necessary relationship between mental incompetence . . . and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation." *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) (cleaned up) (citing *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)). "The federal courts are flooded with pro se litigants with fanciful notions of their rights and deprivations." *Powell*, 680 F.3d at 307. But fanciful notions and bizarre behavior do not establish mental incompetence, or a litigant's supposed inability to comply with basic deadlines already extended multiple times for their benefit—or even ask for further enlargement of those deadlines—or otherwise meaningfully prosecute their case. *See Dimmitt*, 407 F.3d at 24 (no excusable neglect where counsel could simply have moved for extension of deadline prior to its expiration). Far more is required to "distinguish between the truly incompetent and those who—because of a personality disorder or other cause—behave in a foolish or bizarre way, hold irrational beliefs, or are simply inept." *Ferrelli*, 323 F.3d at 203.

The two primary cases on which Ms. Bigelow relies are readily distinguishable. Both involved cases where there was verifiable evidence of severe mental health problems on the part of a party or their counsel that prevented them from complying with deadlines. *See Justus v. Clarke*, 78 F.4th 97, 111-15 (4th Cir. 2023) (concluding "extraordinary circumstance" justified relief under Fed. R. Civ. P. 60(b)(6) where habeas petitioner was so seriously mentally ill that he had been institutionalized twice to restore competency to stand trial, and suffered from either "Schizoaffective Disorder or Bipolar Disorder (Most Recent Episode Mixed, with Psychosis)" as shown by medical records and testimony of treating psychologist); *Crespin v. City of Española*, 2013 WL 2284958 *26-32 (D.N.M. May 10, 2013) (concluding excusable neglect existed under

Fed. R. Civ. P. 60(b)(1) for failure to file an amended complaint where attorney suffered "severe psychologic difficulties" including Post Traumatic Stress Disorder as a result of two recent near-death experiences, as shown by an affidavit from the attorney's clinical psychologist, and Rule 60(b)(1) motion was filed within 6 months—well within the one year provided by Rule 60(b)). By contrast, Ms. Bigelow's motion is based on unauthenticated, inadmissible hearsay records which do not indicate anything more than a generalized anxiety disorder diagnosis, and an inadmissible lay opinion as to Ms. Nadeau's mental health. Where the reason for a party's failure to comply with deadlines is by far the most important factor, and where Ms. Bigelow has not established Ms. Nadeau's failure to prosecute her case was based on anything more than simple neglect or inattention, her motion must fail on this factor alone.

## II.    The Town Has Been, and Will Be, Prejudiced.

Milo is a very small town. A case of the magnitude of Ms. Nadeau's represents a significant increase in its legal budget, and significant strain on its limited resources. While such strain is inherent in any litigation, it is incumbent upon litigants—as reflected in court rules and contemplated by scheduling orders—to prosecute their cases with reasonable dispatch. That has not happened in this case, with serial delays and failures to appear or comply with court rules and orders, all of which have prejudiced the Town. Ms. Bigelow seeks to compound that prejudice by unraveling the choices made by Ms. Nadeau and winding back the clock to the earliest stages of the Scheduling Order.

Ms. Bigelow assures the Court that there is no risk of "loss of evidence, thwarted discovery, . . . or material impairment in the ability to litigate" as a result of Ms. Bigelow's request. (ECF 73 at 6.) The basis for this assurance is unclear. Indeed, the serial delays instituted at the request of Ms. Nadeau, as well as her failure to abide by court rules, have already led to the loss of a witness—

Ms. Nadeau herself—and the very discovery that the Town sought from her.[3] For example, Ms. Bigelow has responded to every one of the Town's requests for admissions originally served on Ms. Nadeau in November 2024, that she lacks knowledge or information sufficient to admit or deny the same. (*See* **Exhibit A**.) Her answers to interrogatories are similarly replete with assertions that she has no knowledge outside of what she has read in certain documents. (*See* **Exhibit B**.) While it is understandable that Ms. Bigelow might lack such knowledge, it highlights the ongoing prejudice to the Town stemming from Ms. Nadeau's failure to diligently (or even minimally) prosecute her own case, which Ms. Bigelow's motion would compound by shifting the consequences of Ms. Nadeau's actions (or inactions) from her estate to the Town.

Ms. Bigelow suggests that she is only seeking "limited discovery" "targeted depositions of Town officials and the Town's assessor," indicating that those depositions would avoid "exploratory examinations of eleven or more witnesses at trial." (ECF 73 at 6.) She suggests that the "targeted" depositions she wishes to take—which she identifies only as "a 30(b)(6) of the town and other key witnesses, such as a representative of the Town's tax assessing consultants and the Town's tax collector"—would "likely" eliminate some of these eleven witnesses. (ECF73 at 4.) It is unclear how these depositions of "town officials" and "other key witnesses" is any more "limited" or "targeted" than the total "5 depositions per side" limit set in the Court's Scheduling Order a year and a half ago. (ECF 8.) In other words, what Ms. Bigelow seeks is to essentially restart the case, and do the discovery that could and should have been done within the deadlines set by the Court, which were already enlarged *seven months* for her mother's benefit. And, of

---

[3] Ms. Bigelow's reliance on the fact that "[n]o trial date is set" is particularly perplexing. No trial date has been set *because of Ms. Nadeau's death*. The expected trial—*after* seven months of delay occasioned by Ms. Nadeau—was February 5, 2025. (ECF 32.) Prior to her passing, this case had been on the trial lists for February 2025, March 2025, and May 2025, and would have proceeded to trial but for Ms. Nadeau's failure to respond to discovery requests.

course, Ms. Bigelow would not have to conduct "exploratory examinations of eleven or more witnesses at trial" had Ms. Nadeau (and, before their withdrawal, her attorneys) conducted *any discovery whatsoever* in the *nine months* between March 28, 2024, and December 20, 2024.

## III.    The Delay Was Substantial.

Ms. Bigelow seeks to retroactively enlarge deadlines that passed in October and December 2024. Those deadlines had already expired months before Ms. Nadeau's passing. This is, by any measure, a substantial delay. And it is apparent that granting Ms. Bigelow's motion would result in yet more substantial delay. (*See supra* Part II.) The cases cited by Ms. Bigelow are in no way comparable, as discussed above. (*See supra* Part I.) Even a period of a few days weighs against relief in the absence of justification. *See Hospital del Maestro*, 263 F.3d at 175; *Tubens*, 976 F.3d at 106.

## IV.    There Is No Evidence to Support a Finding of Good Faith.

There is essentially no evidence from which the Court could find that Ms. Nadeau acted in good faith. This is not a case where a party innocently missed a deadline and promptly moved for relief on the basis of excusable neglect. Rather, Ms. Nadeau's failure to designate experts, conduct discovery, or prosecute her case in any meaningful way, was part of a overall pattern of delay and inattention to this matter. Ms. Nadeau's estate stands in her shoes; Ms. Nadeau's tragic passing does not excuse the estate from the choices she made in conducting this litigation. Whether these decisions were strategic or the result of simple neglect is irrelevant. There is no competent evidence that would support a finding of excusable neglect.

## V.    The Equities Do Not Support Relief.

Contrary to Ms. Bigelow's suggestion there is no separate equitable analysis applicable to her motion. The *Pioneer* factors discussed above are that equitable analysis. As discussed above,

those factors weigh strongly against Ms. Bigelow. The America justice system is an adversarial system in which parties are expected to diligently prosecute their rights. The fact that Ms. Nadeau was, for part of the pendency of this case, pro se, is irrelevant. Pro se litigants are not free to ignore court-imposed deadlines. Moreover, Ms. Nadeau herself agreed that she no longer wanted her then-counsel to represent her when they moved to withdraw. She opposed the appointment of a guardian, and the Court concluded there was no basis for the appointment of a guardian. The Court gave Ms. Nadeau ample time to hire new counsel, if she wished. It extended the deadlines Ms. Bigelow now seeks to further enlarge, seven months. Ms. Nadeau did not, at any point, ask the Court for additional time to designate experts, take discovery, or undertake any meaningful action to prosecute her case. or to further enlarge any of the deadlines her estate now retroactively seeks to enlarge, many months after the fact.

## CONCLUSION

For all of the foregoing reasons, Defendant requests that this Honorable Court deny Plaintiff's Motion to Amend Scheduling Order and grant such other and further relief as it deems appropriate.

Dated: June 17, 2025

/s/ Jonathan P. Hunter, Esq.
Jonathan P. Hunter, Bar No. 4912
jhunter@rudmanwinchell.com

/s/ Stephen W. Wagner, Esq.
Stephen W. Wagner, Bar No. 5621
swagner@rudmanwinchell.com

Attorneys for Defendant Town of Milo
RUDMAN WINCHELL
84 Harlow Street
P.O. Box 1401
Bangor, ME 04402
207.947.4501

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 17th day of June 2025, I electronically filed the foregoing Objection to Plaintiff's Motion to Amend Scheduling Order with the Court's CM/ECF system, which automatically sends notification to all counsel of record.

Dated: June 17, 2025

*/s/ Jonathan P. Hunter, Esq.*
Jonathan P. Hunter, Bar No. 4912
